**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GERALD SMITH, SAMIR RADY, and ) Case No. 07-2104 SC
FLORINTINO FIGUEROA on behalf of )
themselves and all others similarly)
situated, ) ORDER GRANTING
) PLAINTIFFS' MOTION
Plaintiffs, ) FOR CLASS
) <u>CERTIFICATION</u>
v. )
)
CARDINAL LOGISTICS MANAGEMENT )
CORPORATION, a North Carolina )
Corporation, and Does 1 through )
100, inclusive, )
)
Defendants. )
)
_____ )

**I.   INTRODUCTION**

The present matter comes before the Court on the Motion for

Class Certification ("Motion"), filed by the plaintiffs Gerald

Smith, Samir Rady, and Florintino Figueroa (collectively

"Plaintiffs").  Docket No. 67.  The defendant Cardinal Logistics

Management Corporation ("Cardinal" or "Defendant") filed an

Opposition and Plaintiffs submitted a Reply.  Docket Nos. 75, 76.

Plaintiffs seek to certify a class of approximately 280 current

and former truck drivers who worked for Cardinal making deliveries

for The Home Depot.  Plaintiffs assert that they were

United States District Court
For the Northern District of California

misclassified by Cardinal as independent contractors, when they were, as a matter of law, employees. For the following reasons, the Court GRANTS Plaintiffs' Motion.

## II. BACKGROUND

### A. Factual

Cardinal is a North Carolina corporation that provides, in part, truck delivery services to The Home Depot in California. First Am. Compl. ("FAC"), Docket No. 25, at 1. During the relevant period, Cardinal had between three and four dispatch centers located throughout California for drivers performing deliveries for The Home Depot. Card Decl. Ex. 6.[1] Although there were four dispatch centers, the process for hiring new drivers was established and supervised by Cardinal's corporate office in North Carolina. Morasco Dep. at 44-49; 52-53.[2] Once a driver was approved, he was required to sign a contract, of which there were two types: an "Equipment and Service Agreement" ("ESA") and a "Transportation Services Agreement" ("TSA"). These agreements were standard form contracts drafted by Cardinal's corporate office and provided to the dispatch offices. Morasco Dep. at 56, 59. The dispatch offices had no authority to alter the

---

[1] Kim Card is counsel for Plaintiffs and submitted a declaration in support of Plaintiffs' Motion. Docket No. 61. Exhibit 6 is an excerpt of Cardinal's Responses to Plaintiffs' First Set of Requests for Admission.

[2] Excerpts of the deposition of Nicholas Morasco, Cardinal's Operations Manager for the San Francisco market area during much of the relevant period, are attached as Exhibit 1 to the Card Declaration.

2

**United States District Court**
For the Northern District of California

typewritten portions of the agreements nor were the terms of these agreements negotiated with individual drivers.  Morasco Dep. at 59-60; Jones Dep. at 29-30.[3]

Plaintiffs have presented evidence that all but six members of the proposed class signed an ESA when they were initially hired by Cardinal.  Card Decl. ¶ 26; Exs. 16, 17.  According to Plaintiffs, almost every driver signed the ESA in his or her own name.  Morasco Dep. at 61-62.  Cardinal then required drivers to form their own business entities within 30 days of signing an ESA.  Id.  Upon creating their own business entity, drivers were then typically required to sign a new ESA in the name of the entity.  Card Decl. Ex. 9; Morasco Dep. at 61-62.  This process was supervised by Cardinal's corporate office in North Carolina.  Card. Decl. Ex. 9; Morasco Dep. at 61-62.

The TSA was a supplemental contract Cardinal had the drivers sign if and when the drivers obtained their own California motor carrier permit, issued by the Department of Transportation, and their own California number, issued by the California Highway Patrol.  Morasco Dep. at 247-48.  A driver who obtained both was said to have obtained his own "operating authority."  Until a driver was able to obtain this for himself, however, he operated under Cardinal's operating authority.  Jones Dep. at 25.  Jones, who worked for Cardinal from October 2005 through March 2007,

---

[3]   Excerpts of the deposition of Mike Jones, Cardinal's Operations Manager for The Home Depot operations in Southern California during much of the relevant time, are attached as Exhibit 2 to the Card Declaration.  These excerpts shall be referred to as the "Jones Deposition."  Jones appeared for his deposition pursuant to a subpoena served on him by Plaintiffs.

**United States District Court**
For the Northern District of California

testified that in his entire tenure as an Operations Manager for Cardinal, none of the drivers who worked for him obtained his own motor carrier permit.  Id.  For the few drivers who were able to obtain their own operating authority, Cardinal's corporate office in North Carolina would determine what the driver needed and help the driver fill out and submit the appropriate forms.  Morasco Dep. at 230-31.

Cardinal had a standard process for the orientation and training of new drivers, including classroom instruction on Cardinal's policies, The Home Depot's policies, and defensive driving techniques.  Id. at 249-51.  In addition, there was a standard Cardinal Orientation Packet prepared by the corporate office.  Card Decl. Ex. 11.

When drivers signed the initial contract to work for Cardinal, all but 13, according to evidence submitted by Plaintiffs, signed a "Motor Vehicle Lease Agreement."  Card Decl. ¶ 26; id. Ex. 10; Morasco Dep. at 71.  Thus, although the ESA specified that a driver would provide his own truck, all but 13 members of the proposed class leased their trucks from Cardinal when they were initially hired.  Card Decl. ¶ 26; id. Ex. 10; Morasco Dep. at 71.  The Motor Vehicle Lease Agreements were standard form agreements drafted by Cardinal's corporate office.  Morasco Dep. at 73.  The trucks were either owned by Cardinal and leased to the drivers, or owned by Ryder or The Home Depot and leased to Cardinal, which in turn leased the trucks to the drivers.  Id. at 76-78.  Evidence submitted by Plaintiffs also indicates that all of the trucks used by drivers to deliver for

4

The Home Depot contained The Home Depot logo and Cardinal's logo. Id.  Cardinal's drivers were required to wear a uniform consisting of a shirt with The Home Depot and Cardinal logos.  Morasco Dep. at 86-87.  The shirt had to be kept tucked in and the only permissible jacket was one containing the The Home Depot and Cardinal logos.  Id. at 87-89.  In addition, Cardinal maintained grooming standards for its drivers.  Id. at 89-90.

Beginning late 2006, and continuing through mid-2007, Cardinal began requiring all of its drivers to enter into a new, lease-to-own agreement with a company called Cure Leasing and Maintenance, LLC ("Cure").  Id. at 212-13.  Through this program, the trucks that drivers had previously leased from Cardinal were sold by Cardinal to Cure, and the drivers were then required to sign a lease-to-own agreement with Cure.  Id. at 240-42.

Cardinal drivers were paid per delivery, and evidence submitted by Plaintiffs indicates that the rates were standard rates set by Cardinal's corporate office and were not negotiated on an individual basis with each driver.  Id. at 66-70.  In addition, Plaintiffs' evidence indicates that drivers had little, if any, control over the deliveries they were expected to make. The Cardinal dispatch centers in California all operated in the same fashion: the dispatch centers would alert the drivers, through phone message, fax or, later, email or other electronic method, as to the deliveries for each driver for the following day.  Id. at 94-101.  Drivers frequently checked in with the Cardinal dispatch centers periodically throughout the day.  Id. at 106.  In addition, if the drivers had any problems throughout the

day, including even a flat tire, they were instructed to call the

dispatch center. Jones Dep. 47-48. Plaintiffs have presented

evidence that drivers were required to speak with the dispatchers

before and after each load was picked up and delivered. Id. at

133-34.

In late 2006 and early 2007, Cardinal began using the Cube

Route system for its Home Depot dispatch operations. Id. at 50-

52. The Cube Route is a web-based program that allows The Home

Depot to upload its delivery orders throughout the day directly

onto a system to which Cardinal has access. Id. Cardinal can

then upload this delivery information directly to the drivers.

Id. Nick Morasco described the Cube Route system in the following

manner:

> They [Cardinal's delivery drivers] log
> onto the phone in the morning, which
> basically means opening up the computer
> system . . . . They entered their
> beginning mileage that shows on the
> odometer, and basically the rest of the
> day is arrival time and depart [sic] time
> from each stop they make, whether they be
> at a Home Depot store or a customer site.
> At the end of the day, they log in their
> ending mileage that the odometer shows,
> and they shut the phone down.

Morasco Dep. at 110. As Michael Jones stated, the Cube Route

system "[p]retty much gave us [Cardinal dispatchers] a gauge of

what was going on throughout the day with each individual driver."

Jones Dep. at 52.

Under Cardinal's corporate policies and procedures, if a

delivery driver caused damage to a customer's property while

making a delivery, the driver was prohibited from participating in

6

United States District Court
For the Northern District of California

resolution of the claim.  _Id._ at 89-90.  Rather, the customer's complaint, regardless of whether he or she called The Home Depot or Cardinal's dispatch office, was routed to Cardinal's corporate office.  _Id._  The corporate office would then settle the claim with the customer and deduct the settlement amount from the driver's next paycheck, without any input from the driver.  _Id._  Only after seeing the deduction would drivers be able to dispute the amount.  _Id._; Smith Decl., Docket No. 54, ¶ 30; Figueroa Decl., Docket No. 55, ¶ 31; Rady Decl., Docket No. 56, ¶ 35.

   **B.   Procedural**

   Plaintiffs filed the present class-action lawsuit in California State Superior Court.  Notice of Removal, Docket No. 1, Ex. A.  Cardinal removed the case to federal court and filed a Third-Party Complaint against Samir Rady and Rady Transportation, LLC.  Docket No. 44.  Samir Rady, as noted above, is a Plaintiff.  Rady Transportation is a limited liability company established by Samir Rady after he was hired by Cardinal, pursuant to Cardinal's policy.  The Court subsequently granted Plaintiffs' Motion to Strike Defendant's Third-Party Complaint.  Docket No. 77.

   Plaintiffs subsequently filed a First Amended Complaint asserting the following causes of action against Cardinal: (1) failure to reimburse for employee expenses in violation of California Labor Code § 2802; (2) unfair competition in violation of California Business and Professions Code § 17200 _et seq._; (3) unjust enrichment; (4) declaratory relief; (5) request for an accounting; and (6) civil penalties pursuant to the Private Attorneys General Act of 2004, California Labor Code § 2698 _et_

United States District Court
For the Northern District of California

seq.  See FAC.  Plaintiffs seek class certification for each claim

for the following class:

> All persons who: (1) at any time from
> March 14, 2003 up to and through the time
> of judgment in the matter, performed work
> for Cardinal Logistics Management
> Corporation in California as a delivery
> truck driver, making local deliveries
> from Home Depot stores; and (2) were
> designated and paid by Cardinal as an
> independent contractor, rather than as an
> employee; and (3) did not employ other
> drivers to perform the work assigned to
> them by Cardinal.

Mot. at 3 (emphasis in original).

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23 "provides district courts

with broad discretion to determine whether a class should be

certified, and to revisit that certification throughout the legal

proceedings before the court."  Dukes v. Wal-Mart, Inc., 509 F.3d

1168, 1176 (9th Cir. 2007).  "The party seeking certification

bears the burden of showing that each of the four requirements of

Rule 23(a) and at least one requirement of Rule 23(b) have been

met."  Id.  On a motion for class certification, the court is

"bound to take the substantive allegations of the complaint as

true."  Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir.

1975).  "Moreover, at this early stage of the litigation, the

court must only determine if the plaintiffs have proffered enough

evidence to meet the requirements of [Federal Rule of Civil

Procedure] 23, not weigh competing evidence."  Chun-Hoon v. McKee

Foods Corp., No. C 05-0620, 2006 WL 3093764, at *4 (N.D. Cal. Oct.

United States District Court

For the Northern District of California

8

31, 2006).

Rule 23(a) provides that a district court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy.

If a plaintiff is able to present sufficient evidence to demonstrate that these conditions are satisfied, he or she must then demonstrate that at least one of the conditions listed under Rule 23(b) is also satisfied. <u>Dukes</u>, 509 F.3d at 1176. In the present case, Plaintiffs moved to certify the class under Rule 23(b)(3), which authorizes a court to certify a class action if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[4]

---

[4] In a footnote, Plaintiffs also state that "certification would be appropriate under Rule (b)(2) [sic] on the grounds that Cardinal has acted on grounds that apply generally to the class, and the relief plaintiffs seek is primarily declaratory and restitutionary in nature." Mot. at 3 n.1. Other than this conclusory statement, however, Plaintiffs make no attempt to demonstrate why certification is appropriate under Rule 23(b)(2). Plaintiffs carry the burden of demonstrating that certification is appropriate. More importantly, "[c]ourts are not obligated to accept conclusory or generic allegations regarding the suitability

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (internal quotation marks omitted).  In determining whether to certify the class, the court "is bound to take the substantive allegations of the complaint as true . . . ." In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982). Nonetheless, "the court is also required to consider the nature and range of proof necessary to establish those allegations." Id. "If later evidence disproves Plaintiffs' contentions that common issues predominate, the district court can at that stage modify or decertify the class." Dukes, 509 F.3d at 1176.

**IV.   DISCUSSION**

    **A.   Rule 23(a)**

        1.   Numerosity

"There is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable." Breeden, 229 F.R.D. at 628.  In the present case, Plaintiffs have presented evidence indicating that the proposed class consists of approximately 280 delivery

_____

of the litigation for resolution through class action." Breeden v. Benchmark Lending Group, 229 F.R.D.623, 628 (N.D. Cal. 2005) (internal quotation marks omitted).  The Court therefore construes the present motion as a motion for certification solely under Rule 23(b)(3).  See id. at 628 n.2.

United States District Court
For the Northern District of California

truck drivers.  <u>See</u> Card Decl. ¶ 26; Ex. 17.  Cardinal concedes that this many drivers satisfies the numerosity requirement of Rule 23(a)(1).  <u>See</u> <u>id.</u> Ex. 6.  Accordingly, the Court finds that the numerosity requirement is satisfied.

      2.   <u>Commonality</u>

"Commonality focuses on the relationship of common facts and legal issues among class members." <u>Dukes</u>, 509 F.3d at 1177. "Rule 23(a)(2) has been construed permissively." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule." <u>Id.</u> "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Id.</u> The "commonality test is qualitative rather than quantitative--one significant issue common to the class may be sufficient to warrant certification." <u>Dukes</u>, 509 F.3d at 1177.

In the present case, the underlying legal issue is whether the putative class members were improperly classified as independent contractors in violation of California law.  Given that Plaintiffs have presented evidence indicating that Cardinal had a uniform policy for the hiring of and interacting with the delivery drivers, and in light of the legal issue underlying the putative class and the common core of salient facts, the Court concludes that the commonality requirement is satisfied.

      3.   <u>Typicality</u>

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or

11

defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." Dukes, 509 F.3d at 1184. In examining this condition, courts "consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same alleged common practice . . . ." Id.

Plaintiffs have presented evidence that Cardinal had a corporate practice of classifying delivery drivers as independent contractors and that this practice was common to the overwhelming majority of Cardinal delivery drivers. This evidence is sufficient, for purposes of this Motion, to satisfy the requirement of Rule 23(a)(3) that Plaintiffs' claims are typical of the claims for the proposed class. Cardinal does not argue otherwise.

Courts have also interpreted Rule 23(a)(3) to require that "the named plaintiffs be members of the class they represent." Id. Cardinal argues that Gerald Smith, one of the named Plaintiffs, is not typical of the class because Smith is a Nevada resident who, according to Cardinal, only made 17% of his deliveries in California. Opp'n at 4. As Cardinal does not contest the typicality of Samir Rady and Florentino Figueroa, there is no dispute that at least two of the three named Plaintiffs satisfy the typicality requirement. For purposes of

United States District Court
For the Northern District of California

12

United States District Court
For the Northern District of California

this Motion, therefore, typicality is satisfied because two of the named Plaintiffs are typical of the class.  Cf. Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) (stating that only one of the named plaintiffs must be an adequate class representative to satisfy Rule 23(a)(4)).

The Court notes, however, that even if Smith were the only named Plaintiff, he would likely still be typical.  Although he lives in Reno, he was employed by Cardinal's offices in California.  Smith Decl. ¶ 3.  He signed his contract with Cardinal at its office in Richmond, California, where he also spent several days training.  Id. ¶ 5.  Although Smith made deliveries in Nevada, he also made deliveries in California and received most of his dispatch instructions from Cardinal's Sacramento office.  Id. ¶ 18.  Moreover, according to Smith, Cardinal did not even have any offices in Nevada.  Id. ¶ 5.  In light of this evidence connecting Smith to California, it would appear that his claims are typical of the proposed class.

Furthermore, Cardinal's argument that California labor laws do not apply to non-residents is without support.  See, e.g., Clothesrigger, Inc. v. GTE Corp., 191 Cal. App. 3d 605, 615 (Ct. App. 1987) (stating "California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery").  Even the case cited by Cardinal does not stand for the proposition Cardinal asserts.  In Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal. 4th 557, 565 (1996), the California

13

Supreme Court held that "California employment laws implicitly extend to employment occurring within California's state law boundaries . . . ." Nowhere in <u>Tidewater</u> did the court hold that California employment laws do not extend to residents of other states who work in California.[5] In short, Cardinal has presented no support for its argument that residents of other states who work in California do so without the protections of California law.

For the foregoing reasons, the Court finds that Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### 4.   <u>Adequate Representation</u>

"Rule 23(a)(4) permits certification of a class action only if the 'representative parties will fairly and adequately protect the interests of the class.'" <u>Dukes</u>, 509 F.3d at 1185 (quoting Fed. R. Civ. P. 23(a)(4)). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." <u>Id.</u>

In the present case, it is uncontested that the named Plaintiffs were all delivery drivers for Cardinal and that the class they seek to represent is composed of drivers who are or were employed in the same positions. Nonetheless, Cardinal argues that Plaintiffs are not able to adequately represent the class

---

[5]   In support of this argument, Cardinal also cites to an unpublished opinion of the California Court of Appeal. <u>See</u> Opp'n at 4 (citing <u>Guy v. IASCO</u>, 2004 WL 1354300, at *5 (Ct. App. 2004)). As California Rule of Court 977(a) prohibits courts and parties from citing or relying on opinions not certified for publication, citation to this case was improper under Civil Local Rule 3-4(e).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

because several current Cardinal drivers want to be independent contractors, rather than employees, and are opposed to the current litigation.  Such a situation, argues Cardinal, creates irreconcilable conflicts between the named Plaintiffs and other putative class members.  In support of this argument, Cardinal has submitted affidavits from three people currently employed as delivery drivers by Cardinal.  See White Decl.; Macias Decl.; and Blugh Decl.[6]  These drivers have stated, in sworn affidavits, that they are independent contractors, that they benefit from Cardinal's current system, and that they would be harmed if Cardinal were forced to reclassify them as employees.  See White Decl. ¶¶ 10-17; Macias Decl. ¶¶ 6-10; Blugh Decl. ¶¶ 6-12.

To begin, it appears that at least one of the above-mentioned declarants was operating under a mistaken presumption.  White, in his declaration, stated that "Plaintiffs in this case are seeking to turn all of Cardinal's contractors into employees."  White Decl. ¶ 14.  Plaintiffs, however, are not seeking to outlaw the employment relationship of an independent contractor.  Rather, Plaintiffs are alleging that the current system, as operated by Cardinal, violates California law by attempting to label Cardinal delivery drivers as independent contractors when such drivers are employees as a matter of law.  Even if Plaintiffs were to eventually prevail on this claim, there would be nothing to stop Cardinal, at that point, from employing actual independent contractors, so long as such an arrangement complied with

---

[6]  Mike White, Robbie Macias, and Andre Blugh submitted declarations in support of Cardinal's Opposition.  Docket No. 75.

15

**United States District Court**
For the Northern District of California

California law.

Furthermore, none of the three above-referenced declarations acknowledges an understanding that one of Plaintiffs' primary claims is for monetary damages under California Labor Code § 2802. Given that the declarations demonstrate an incomplete grasp of the nature of Plaintiffs' lawsuit, the declarants' alleged opposition to the lawsuit is entitled less weight. Moreover, that only three delivery drivers, out of 69 currently-employed drivers and a class of approximately 280 current and former drivers, are satisfied with their current employment arrangement does not, in this Court's view, constitute sufficient evidence of a conflict of interest to warrant a finding of inadequate representation.

In addition, where certain employees, such as Plaintiffs, seek to invoke the protections afforded under California labor laws, courts must be mindful of the purposes underwriting these laws. As the California Supreme Court has recognized, "the protections conferred by [the Workers Compensation Act] have a public purpose beyond the private interests of the workers themselves." S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341, 358 (1989). "Among other things, the statute represents society's recognition that if the financial risk of job injuries is not placed upon the businesses which produce them, it may fall upon the public treasury." Id. It would be antithetical to this underlying purpose to permit three current drivers to frustrate the attempt by others to assert rights under California labor law solely because these three are satisfied with their current jobs. This is especially true given

that the three may have an incomplete understanding of the rights

Plaintiffs are seeking to invoke.  For these reasons, the Court

finds that the conflict of interest Cardinal attempts to invoke is

insufficient to overcome Plaintiffs' adequacy as class

representatives.

Rule 23(a)(4) also requires the Court to inquire into the

capability of Plaintiffs' counsel in prosecuting the claims.

Dukes, 509 F.3d at 1185.  "In the absence of a basis for

questioning counsel's competence, the named plaintiffs' choice of

counsel will not be disturbed."  Breeden, 229 F.R.D. at 630

(citing Mateo, 805 F. Supp. at 771).  Plaintiffs' counsel have

submitted evidence indicating that they are fully capable of

adequately representing the class.  See, e.g., Card Decl. ¶¶ 2-7;

Gertler Decl. ¶¶ 1-8.[7]  The Court therefore finds that the named

Plaintiffs and their counsel will adequately represent the

interests of the class.

**B.   Rule 23(b)**

Class certification under Rule 23(b)(3) is satisfied if:

> [T]he court finds that the questions of
> law or fact common to class members
> predominate over any questions affecting
> only individual members, and that a class
> action is superior to other available
> methods for fairly and efficiently
> adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

1.   Predominance of Questions of Law or Fact

"The Rule 23(b)(3) predominance inquiry tests whether

---

[7]   Jonathan Gertler, counsel for Plaintiffs, submitted a
declaration in support of Plaintiffs' Motion.  Docket No. 63.

17

**United States District Court**
For the Northern District of California

proposed classes are sufficiently cohesive to warrant adjudication

by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

623 (1997).  "This analysis presumes that the existence of common

issues of fact or law have been established pursuant to Rule

23(a)(2); thus, the presence of commonality alone is not

sufficient to fulfill Rule 23(b)(3)." Hanlon, 150 F.3d at 1022.

"[T]he examination must rest on 'legal or factual questions that

qualify each class member's case as a genuine controversy . . .

.'" Id. (quoting Amchem, 521 U.S. at 623).  "Because no precise

test can determine whether common issues predominate, the court

must pragmatically assess the entire action and the issues

involved." Chun-Hoon, 2006 WL 3093764, at *2 (internal quotation

marks omitted).

     Under California law, the "principal test of an employment

relationship is whether the person to whom service is rendered has

the right to control the manner and means of accomplishing the

result desired . . . ." Borello, 48 Cal. 3d at 350 (internal

quotation marks omitted).  In addition, while the right to control

work details is the most important consideration, courts "endorse

several 'secondary' indicia of the nature of a service

relationship." Id.  These indicia include the following: the

right to discharge at will, without cause; whether the one

performing services is engaged in a distinct occupation or

business; the kind of occupation, with reference to whether, in

the locality, the work is usually done under the direction of the

principal or by a specialist without supervision; the skill

required in the particular occupation; whether the principal or

United States District Court
For the Northern District of California

18

United States District Court

For the Northern District of California

the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; the length of time for which the services are to be performed; the method of payment, whether by the time or by the job; whether or not the work is part of the regular business of the principal; and whether or not the parties believe they are creating the relationship of employer-employee. Id. at 351.  "'Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.'"  Id. (alterations in original) (quoting Germann v. Workers' Comp. Appeals Bd., 123 Cal. App. 3d 776, 783 (Ct. App. 1981)).

     In light of the above-mentioned factors, Plaintiffs have satisfied their burden under Rule 23(b)(3) for class certification.  To begin, Plaintiffs have presented substantial evidence regarding Cardinal's "right to control the manner and means" of the deliveries Plaintiffs carry out for The Home Depot. Borello, 48 Cal. 3d at 350 (internal quotation marks omitted).  As noted in Section II, supra, Plaintiffs have submitted evidence indicating that Cardinal exercises pervasive control over the manner in which Plaintiffs, as delivery drivers, operate, including the following: the sequence of Plaintiffs' deliveries; Plaintiffs' uniforms; the appearance of Plaintiffs' trucks; the manner in which Plaintiffs lease their trucks; the rates Plaintiffs receive for their deliveries; the locations where Plaintiffs are supposed to leave their delivery trucks at night; the hours during which Plaintiffs may make deliveries; the manner in which disputes involving damage to customers' property are

resolved; the hiring and training process for new drivers; and the establishment of individual corporations by each new driver.

Similar facts have recently prompted the California Court of Appeal to uphold a trial court's conclusion, after a jury trial, that a company's delivery drivers operated as employees, rather than independent contractors.  In Air Couriers International v. Employment Development Department, 150 Cal. App. 4th 923 (Ct. App. 2007), the Court of Appeal held that there was substantial evidence that the delivery drivers were employees, rather than independent contractors.  The court found that the simplicity of the work (taking a package from point A to point B) made detailed supervision of the actual routes and speeds used by the drivers unnecessary; instead, the hiring company "retained all necessary control over the overall delivery operation."  Id. at 937.  In addition, the court noted the following: the drivers worked a regular schedule; rarely turned down jobs; were not engaged in a separate profession; were required to use the master company's forms to be paid; were paid on a regular schedule; were provided deadlines for their deliveries by the master company's dispatchers; were required to notify the dispatchers when deliveries were complete; were encouraged to wear uniforms; delivered packages to customers who were not their own; and had their rates set by the master company.  Id. at 938.  Each of these facts is also present in the instant action.

Cardinal makes much of the fact that Plaintiffs, in signing a work agreement with Cardinal, expressly consented to working as independent contractors, rather than employees.  As the California

United States District Court

For the Northern District of California

Supreme Court has noted, "a worker's express or implied agreement to forego coverage as an independent contractor is 'significant.'" Borello, 48 Cal. 3d at 358. Nonetheless, the court also noted that "where compelling indicia of employment are otherwise present, we may not lightly assume an individual waiver of the protections derived from that status." Id. This is especially true where, as here, a plaintiff sues under a statute such as California Labor Code § 2802, which contains protections that are nonwaivable. See Cal. Labor Code § 2804 (stating "[a]ny contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void . . ."). Finally, as the California Supreme Court has noted, "[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced." Borello, 48 Cal. 3d at 349.

Accordingly, the Court finds that the common issue of whether Cardinal misclassified its drivers as independent contractors, rather than employees, predominates over any individual questions. Such a conclusion is in line with a recent decision from this district addressing similar issues. See, e.g., Chun-Hoon, 2006 WL 3093764, at *3 (stating "the common questions concern whether defendant misclassified its distributors as independent contractors instead of employees, and these questions predominate over individual ones").

Cardinal argues that Plaintiffs' proposed class is fatally flawed because it requires individualized inquiry into the nature of each driver's situation, including whether the driver had

21

**United States District Court**
For the Northern District of California

established his own corporation and whether the driver owned his own truck and had his own California "operating authority."  These issues, although relevant, are largely subsumed under the ultimate issue of Cardinal's control over its delivery drivers.  Thus, although some drivers may have owned their own trucks and had their own operating authority, these individual issues will not prevent an analysis of the degree to which Cardinal exercised control.  Moreover, federal courts have recognized that individual issues will likely be present during class actions but that such issues should not prevent class certification so long as they do not override the underlying common question.  <u>See</u>, <u>e.g.</u>, <u>Chu-Hoon</u>, 2006 WL 3093764, at *5 (stating "even though individual issues exist, they do not bar class certification").

In support of its arguments against class certification, Cardinal relies on <u>Spencer v. Beavex, Inc.</u>, No. 05-1501 (S.D. Cal. Dec. 15, 2006) (order denying class certification).  This reliance, however, is misplaced.  In <u>Beavex</u>, the court denied class certification for a group of delivery drivers because it was a "potentially impossible task" to determine whether the putative class members, rather than third-party contractors hired by the putative class members, drove the delivery routes on any given day.  <u>Id.</u> at 13.  This was especially problematic in light of the proposed class, which was defined as drivers who did not provide "more than 51% of their services to Beavex, Inc. by using their own employees or subcontractors."  <u>Id.</u>  Thus, the court concluded that "Plaintiffs ha[d] failed to show that it [was] administratively feasible to ascertain which drivers actually

**United States District Court**
For the Northern District of California

drove less than 51% of their routes, so as to bring them within the modified proposed class definition." _Id._ at 14. The court further stated that the "issue of what use different drivers ma[d]e of the option to use back-ups and subs is a highly individualized question of fact" that precluded certification under Rule 23(b)(3). _Id._ at 23.

Such concerns are inapplicable to the present case, as Plaintiffs' proposed class specifically excludes any Cardinal drivers who hired other drivers to drive their routes. Perhaps recognizing this, Cardinal also asserts that because some of the putative class members hired other service providers, including accountants, the reasoning of _Beavex_ is equally applicable. Such reasoning, however, is unpersuasive. Whether a person hires an accountant is hardly irrelevant to the present issues. Cardinal's additional arguments as to why common questions of law or fact do not predominate are also without merit.

2.    Superiority of Class Action

A party seeking class certification must also demonstrate that class treatment is a superior method for resolving the dispute. Fed. R. Civ. P. 23(b)(3). Pertinent to this analysis are the following factors:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the

23

**United States District Court**
For the Northern District of California

particular forum; and
(D) the likely difficulties in
managing a class action.

Fed. R. Civ. P. 23(b)(3).

Regarding the first factor, courts "have found that where damages sought by each class member are not large, class members have a reduced interest in individually controlling a separate action." <u>Breeden</u>, 229 F.R.D. at 630. Plaintiffs have presented evidence and argument that full recovery would result in an average amount of damages of $25,000-$30,000 per year of work for each class member. Given that not all of the putative class members worked for the entire class period of approximately five years, the Court cannot conclude that the damages sought are large enough to weigh against a class action. <u>See</u> <u>Breeden</u>, 229 F.R.D. at 630 (stating "[e]ven those members of the putative class who could potentially submit the largest claims for damages . . . are nonetheless unlikely to present the court with the kinds of multi-million dollar claims frequently at issue in Rule 23 class actions"). As the claims in the present action appear to be relatively small, the interest of the individual Plaintiffs in personally controlling the litigation is similarly small. Such a finding favors certification of the class as a superior method of resolving the dispute.

In regards to the second factor, the Court is not aware of any currently-pending related claims involving the class members. This factor therefore does not weigh against a finding of superiority.

Nor does the third factor relating to the litigation of the

24

United States District Court

For the Northern District of California

1   claims in a particular forum weigh against a finding of

2   superiority.  The proposed class consists of Cardinal drivers in

3   California.  One of the four dispatch offices was located in

4   Richmond, California, which is within this Court's district.  As

5   neither party has presented any reason why litigation in this

6   forum would be undesirable, the Court finds that this factor

7   supports class certification.

8           The final factor is directed towards any possible

9   difficulties that may be encountered in the management of the

10  class action.  In addressing this factor, courts have considered

11  the size of the class, the difficulties in complying with notice

12  requirements, and other special individual issues in determining

13  whether class treatment is superior.  See Breeden, 229 F.R.D. at

14  631.  In the present case, the putative class size of 280 members

15  is small enough such that it should not present any particular

16  difficulties.  In addition, because the Court cannot discern any

17  specialized issues or other difficulties that would make class

18  treatment particularly problematic, this factor weighs in favor of

19  class certification.  The Court accordingly finds that a class

20  action would be a superior method for resolution of this

21  litigation.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28                                      25

**V.**      **CONCLUSION**

For the reasons stated herein, the Court GRANTS Plaintiffs' Motion for Class Certification.


IT IS SO ORDERED.


Dated: September 5, 2008

_____
UNITED STATES DISTRICT JUDGE