UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD SMITH, SAMIR RADY, and FLORENTINO FIGUEROA on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>CARDINAL LOGISTICS MANAGEMENT CORPORATION, a North Carolina Corporation, and Does 1 through 100, inclusive,<br><br>          Defendants. | Case No. 07-2104 SC<br><br>ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY <u>JUDGMENT</u> |

**I.   INTRODUCTION**

The present matter comes before the Court on the Motion for Partial Summary Judgment ("Motion"), filed by Defendant Cardinal Logistics Management Corporation ("Cardinal" or "Defendant"). Docket No. 91.  Plaintiffs Gerald Smith, Samir Rady, and Florentino Figueroa (collectively "Plaintiffs") filed an Amended Opposition and Defendant submitted a Reply.[1]  Docket Nos. 116, 120.  For the following reasons, the Court DENIES the Motion.

---

[1] Plaintiffs originally filed an Opposition on February 27, 2009.  <u>See</u> Docket No. 97.  The Court subsequently issued an order granting Plaintiffs' request for a continuance, and permitting Plaintiffs to file an Amended Opposition.  <u>See</u> Docket No. 100.

**II.   BACKGROUND**

    **A.   Factual Background**

Cardinal is a North Carolina corporation that provides, in part, truck delivery services to The Home Depot in California. Hostetler Decl. ¶¶ 2-4.[2] Cardinal hired Plaintiffs as independent contractors. Mem. in Supp. of Mot. at 3. Plaintiffs assert they were misclassified by Cardinal, and that they were really employees. First Am. Compl. ("FAC"), Docket No. 25, ¶¶ 1-8.

As part of Cardinal's recruitment process, Cardinal provided Plaintiffs with Worksheets that detailed a driver's estimated gross revenue or earnings, estimated operating expenses or equipment charges that would be deducted from gross revenue, and estimated net revenue or earnings. See Merklein Decl. ¶¶ 6-11, Ex. 1 ("Earnings Worksheet Class A Daycab"), Ex. 2 ("Earnings Worksheet Reno, NV"), Ex. 3 ("Earnings Worksheet San Francisco, CA").[3] The estimated operating expenses included charges for leasing a truck, maintenance, various forms of insurance, and fuel. See Earnings Worksheet Class A Daycab; Earnings Worksheet Reno, NV; Earnings Worksheet San Francisco, CA.

After Plaintiffs began performing transportation services, Cardinal provided them with weekly Settlement Sheets detailing the gross compensation earned, the deducted expense items, and the net

---

[2] Tom Hostetler, Chief Executive Officer of Cardinal, filed a declaration in support of the Motion. Docket No. 92 ("Mem. in Supp. of Mot.") Ex. A.

[3] Hayden Lance Merklein, Vice President of Driver Development and Contractor Compliance for Cardinal, filed a declaration in support of the Motion. Mem. in Supp. of Mot. Ex. B.

2

compensation paid to the driver.  See Merklein Decl. ¶¶ 12, Ex. 7 ("Figueroa Settlement Sheet"), Ex. 8 ("Rady Settlement Sheet"); Ex. 9 ("Smith Settlement Sheet").  Each driver was also provided with a Settlement Detail Summary at the end of the year detailing gross revenue earned, expenses incurred, and net compensation paid.  See Merklein Decl. ¶¶ 18-20, Ex. 10 ("Figueroa Settlement Sheet Detail Summary"), Ex. 11 ("Rady Settlement Detail Summary"), Ex. 12 ("Smith Settlement Detail Summary").  The expenses deductions were typically between forty and fifty percent of gross earnings.  See Mem. in Supp. of Mot. at 4-5; Merklein Decl. ¶¶ 9-11.

Under Cardinal's compensation system, the primary category of earnings was the rate paid per delivery.  Card Decl.[4] Ex. 1 ("Dep. of Brian Farris") at 58:11-60:12; Figueroa Settlement Sheet; Rady Settlement Sheet; Smith Settlement Sheet.  Payments for deliveries were identified on Plaintiffs' Settlement Sheets by labels such as "Flatbed stops," "Full truckload," or "Difficult Stop."  Dep. of Brian Farris at 58:11-60:12; Figueroa Settlement Sheet; Rady Settlement Sheet; Smith Settlement Sheet.  Plaintiffs were also paid for "Delay" time, for "Carry In," if they had to carry flooring or drywall into a customer's home, and for "Out of Area" miles.  Dep. of Brian Farris at 62:15-64:16.  If a driver worked a full six-day week, he or she was paid "Exclusive Use" pay.  Id. at 64:17-65:23.  Drivers were also paid a "Fuel Surcharge" based on

---

[4] Kim E. Card, co-counsel for Plaintiffs and the certified class, filed a declaration in support of the Amended Opposition. Docket No. 118.

3

fuel prices. Id. at 120:16-124:2; Figueroa Settlement Sheet; Rady Settlement Sheet; Smith Settlement Sheet. The total for these categories of compensation was shown on the Settlement Sheets as "Taxable Earnings." See Figueroa Settlement Sheet; Rady Settlement Sheet; Smith Settlement Sheet.

At the end of the Settlement Sheets, there are "Settlement Deductions" that were deducted from drivers' taxable earnings. The deductions include a "Tractor Lease" payment, deductions for fuel that was purchased using a "Comdata" card provided by Cardinal, and deductions for truck maintenance, occupational and accident insurance, liability insurance, accounting services, and insurance for forklifts, which was referred to as "Bobtail Insurance." See Figueroa Settlement Sheet; Rady Settlement Sheet; Smith Settlement Sheet; see also Dep. of Brian Farris at 92:24-93:11, 99:9-102:12, 103:19-25. In addition to these weekly deductions, money was sometimes deducted from Plaintiffs' Settlement Sheets for uniforms, merchandise damage, and property damage claims. Dep. of Brian Farris at 104:1-3, 109:22-110:20.

**B.  Procedural Background**

Plaintiffs filed the present class-action lawsuit in California State Superior Court. Notice of Removal, Docket No. 1, Ex. A. Cardinal removed the case to this Court. Id. Plaintiffs assert the following causes of action against Cardinal: (1) failure to reimburse for employee expenses in violation of California Labor Code section 2802; (2) unfair competition in violation of California Business and Professions Code section 17200 et seq.; (3) unjust enrichment; (4) declaratory relief; (5)

4

1  request for an accounting; and (6) civil penalties pursuant to the
2  Private Attorneys General Act of 2004, California Labor Code
3  section 2698 et seq. Id. ¶¶ 54-87. The Court granted Plaintiffs'
4  Motion to Strike Defendant's Third-Party Complaint. Docket No.
5  77. The Court granted Plaintiffs' Motion for Class Certification.
6  Docket No. 83. Defendant now moves for partial summary judgment
7  on Plaintiffs' first cause of action, the Section 2802 claim.
8  Mem. in Supp. of Mot. at 1.

### III. LEGAL STANDARD

Entry of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must not weigh the evidence. Id. at 255. Rather, the nonmoving party's evidence must be believed and "all justifiable inferences are to be drawn in [the nonmovant's] favor." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (quoting Anderson, 477 U.S. at 255).

///
///
///

5

**IV.  DISCUSSION**

  **A.  Employer's Duty to Reimburse Expenses**

California Labor Code Section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Cal. Lab. Code § 2802(a).  Necessary expenditures and losses include "all reasonable costs."  Id. § 2802(c).  Any contract or agreement made by an employee to waive this right to indemnification is null and void.  Id. § 2804.

In Gattuso v. Harte-Hanks Shoppers, Inc., the Supreme Court of California considered whether Harte-Hanks Shopper, Inc., a corporation that prepares and distributes advertising booklets and leaflets, could satisfy its obligation to reimburse outside sales representatives for their automobile expenses by paying them higher base salaries and higher commission rates than it paid to inside sales representatives.  42 Cal. 4th 554, 559-60 (2007). The court noted that Section 2802 "is designed to prevent employers from passing their operating expenses on to their employees."  Id. at 562.  The Court held that an employer may satisfy this statutory reimbursement obligation by paying an increased salary or commission.  Id. at 559.

The court endorsed three different ways employers can satisfy the reimbursement obligation for work-required use of an employee's automobile: the "actual expense method," the "mileage reimbursement method," and the "lump-sum method."  Id. at 568-571. The court noted that providing the employee with a lump-sum

6

payment is the least onerous of the three methods because it does not require detailed record keeping. Id. at 568-69. Under this third alternative, an employer can combine wages and business expense reimbursements in "a single enhanced employee compensation payment," provided that there is "some method or formula to identify the amount of the combined employee compensation payment that is intended to provide expense reimbursement." Id. at 572-73. Using that method, the employee should be able to determine if the employer has discharged all of its legal obligations as to both wages and business expense reimbursements. Id. at 573. The court concluded that:

> an employer may satisfy its statutory business expense reimbursement obligation under section 2802 by paying employees enhanced compensation in the form of increases in base salary or commission rates, provided the employer establishes some means to identify the portion of overall compensation that is intended as expense reimbursement, and provided also that the amounts so identified are sufficient to fully reimburse the employees for all expenses actually and necessarily incurred.

Id. at 575.

### B.   Cardinal's Compensation System and Section 2802

Cardinal wants the Court to assume "for purposes of this motion" that Plaintiffs are employees. Mem. in Supp. of Mot. at 1 n.1. Cardinal argues that even if Plaintiffs are employees, summary judgment should be entered against Plaintiffs on their Section 2802 claim because based on the Earnings Worksheets and the Settlement Sheets, the drivers can identify the portion of compensation attributable to expense reimbursement, and they have been fully reimbursed for their necessary expenses. Id. at 1, 8-

7

12.

One problem for Cardinal's argument is that the amounts that Cardinal claims are expense reimbursements appear on the Earnings Worksheets and Settlement Statements as expense deductions. See Earnings Worksheet Class A Daycab; Earnings Worksheet Reno, NV; Earnings Worksheet San Francisco, CA; Figueroa Settlement Sheet; Rady Settlement Sheet; Smith Settlement Sheet. Cardinal contends that these deductions can be construed as reimbursements because when it initially determined how much drivers would be compensated for their services, it combined an estimate of what a driver would earn in the geographic area -- a "Target 1099" -- and an estimate of a driver's expenses. Mem. in Supp. of Mot. at 3-4; Farris Decl. ¶¶ 4-5.[5] In other words, in determining the drivers' rates of compensation, Cardinal factored in their projected expenses. See Dep. of Brian Farris at 108:20-109:21; Farris Decl. ¶ 5. Hence, according to Cardinal, Plaintiffs' compensation structure was specifically enhanced to pay them for their necessary and reasonable expenses, and based on the Earnings Worksheets and the Settlement Sheets, Plaintiffs can differentiate between wages and expense reimbursements. Mem. in Supp. of Mot. at 10-11.

The Court finds that this compensation system does not satisfy the test for expense reimbursement established by the California Supreme Court in Gattuso. Under Cardinal's system, there was no up-front, lump-sum payment that included a means of

---

[5] Brian T. Farris, Vice-President of Mid-Atlantic Operations for Cardinal, filed a declaration in support of Cardinal's Motion. Mem. in Supp. of Mot. Ex. C.

8

identifying the amount being paid for labor performed and the amount being paid as reimbursement for business expenses. Instead, the Earnings Worksheets merely provided the drivers with an estimate of rates per delivery and likely expenses. See Earnings Worksheet Class A Daycab; Earnings Worksheet Reno, NV; Earnings Worksheet San Francisco, CA. The only payment the drivers received occurred after expenses had already been deducted. See Figueroa Settlement Sheet; Rady Settlement Sheet; Smith Settlement Sheet. Cardinal wants the Court to treat these deductions as functionally equivalent to reimbursements. This system of compensation is too far removed from what the California Supreme Court had in mind. The Court will not treat it as equivalent to the lump-sum payment method endorsed by the California Supreme Court in Gattuso.

Furthermore, there are questions of fact as to whether the rates of compensation were sufficient to fully reimburse drivers for all necessary expenses. The testimony about how drivers' expenses were taken into account when setting the rates of compensation is less than clear. See Farris Dep. at 49:18-51:3; 81:5-83:12; 89:24-92:23. Cardinal's rates of compensation were based in part on its need to provide a competitive bid to Home Depot. See id. at 77:7-78:6; 86:24-88:23. Deductions were made for expenses like property and merchandise damage, but these expenses were not factored in when determining drivers' rates of compensation. Opp'n at 20-21; Farris Dep. at 109:22-110:20. The Court DENIES Cardinal's request for summary judgment in its favor on Plaintiffs' Section 2802 claim.

### C. Vehicle Lease Payments

Cardinal contends that the Court should find, as a matter of law, that its drivers' vehicle lease payments are not recoverable under Section 2802. Mem. in Supp. of Mot. at 13-16. In Estrada v. FedEx Ground Package System, Inc., the California Court of Appeal affirmed the trial court's finding that FedEx drivers were employees, not independent contractors, for purposes of determining the drivers' right to reimbursement of their expenses. 154 Cal. App. 4th 1, 10-13 (Ct. App. 2007). The Estrada court went on to determine that FedEx was not required, under California law, to reimburse drivers for the costs of their trucks, as opposed to the costs of operating their trucks. Id. at 25.

The court of appeal made this determination based on its evaluation of Interpretive Bulletins, Opinion Letters, and a Manual issued by the Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE"). Id. at 21-25. In a January 1985 Interpretive Bulletin, the DLSE stated:

> an applicant for employment may be required, as a condition of employment, to furnish his/her own automobile or truck to be used in the course of employment, regardless of the amount of wages paid. Under Labor Code Section 2802, an employer who requires an employee to furnish his/her own car or truck to be used in the course of employment would be obligated to reimburse the employee for the costs necessarily incurred by the employee in using the car or truck in the course of employment.

Mem. in Supp. of Mot. Ex. G ("Bulletin 84-7") at 2.

In Estrada, the court noted that there was some tension between Bulletin 84-7, and an Opinion Letter issued by the DLSE on January 2, 1997. 154 Cal. App. 4th at 22-23. In the 1997 Opinion

10

1  Letter, the DLSE stated that "a condition of employment which
2  requires the employee or applicant to make a $50,000.00 purchase
3  of a vehicle which advertises the name of the employer and further
4  requires that the vehicle be purchased from one vendor (or any
5  number of vendors) chosen by the employer is violative of
6  [section] 450."[6]  Id. at 23.  The DLSE went on to state that "even
7  if the practice you describe were not prohibited by the terms of
8  [section] 450, the employer would be liable to the employee for
9  the costs incurred by the employee under [section] 2802."  Id.
10     The Estrada court considered, and rejected, the argument that
11  the 1997 Opinion Letter clarified and superceded Bulletin 84-7.
12  Id.  The court determined that a 2002 Update of the DLSE
13  Enforcement Policies and Interpretations Manual, IWC Order No. 9-
14  2001, other DLSE Opinion Letters, and a 2005 Commentary all
15  support the position that it is lawful for an employer to require
16  employees to provide their own vehicles as a condition of
17  employment, provided that the employer fully reimburses the
18  employees for the costs of operating or using those vehicles.  Id.
19  at 23-25.  The Estrada court affirmed the trial court's finding
20  that FedEx drivers were not entitled to reimbursement for expenses
21  relating to purchasing or leasing a vehicle for purposes of
22  performing pick up and delivery services.  Id. at 21-22.
23     Here, prior to a determination that Cardinal's drivers are

---

[6] Under California Labor Code Section 450, "[n]o employer . . . may compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of any thing of value."  Cal. Lab. Code § 450(a).

11

employees, this Court is not willing to say, as a matter of law, that Cardinal's drivers are not entitled to reimbursement of their vehicle lease payments. Cardinal's drivers were required to lease trucks from Cardinal, although by early 2008, Cardinal had stopped leasing trucks to class members. Card Decl. Ex. 6 ("Dep. of Lance Merklein") at 71:8-17, 174:1-178:10. The lease payments were deducted from the drivers' paychecks. Dep. of Brian Farris at 93:8-11; Figueroa Settlement Sheet; Rady Settlement Sheet; Smith Settlement Sheet; Merklein Decl. ¶ 21. These facts are similar to those in Estrada, where the drivers were required to purchase or lease trucks, and the drivers could obtain loans through FedEx's business support program with repayment through pay deductions. 154 Cal. App. 4th at 7. If a jury finds that Cardinal's drivers were in fact employees, then the Estrada decision provides strong support for Cardinal's contention that class members are not entitled to be reimbursed for their truck lease payments.

Nevertheless, prior to a determination that Cardinal's drivers are employees, the Court is not willing to engage in hypothetical speculation about whether the lease payments in this case are or are not reimbursable. The better course is to proceed to trial, where a fuller record will afford a more substantial basis for decision. See, e.g. Anderson v. Hodel, 899 F.2d 766, 770-71 (9th Cir. 1990). The Court DENIES Cardinal's request for summary judgment in its favor on the question of whether it is required to reimburse Plaintiffs for the costs of leasing their trucks.

**V.   CONCLUSION**

For the reasons stated herein, the Court DENIES Defendant's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

Dated: August 19, 2009

_____
UNITED STATES DISTRICT JUDGE