IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD SMITH, SAMIR RADY, and FLORENTINO FIGUEROA, on behalf of themselves and those similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CARDINAL LOGISTICS MANAGEMENT CORPORATION, a North Carolina Corporation,<br><br>　　　　Defendant. | Case No. 07-2104 SC<br><br>ORDER GRANTING MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES |

## I.　INTRODUCTION

Before the Court are two unopposed motions. Plaintiffs Gerald Smith ("Smith"), Samir Rady ("Rady"), and Florentino Figueroa ("Figueroa") (collectively, "Plaintiffs") seek final approval of the settlement of this certified class action. ECF No. 151 ("Fin. App. Mot."). Class Counsel also moves for attorneys' fees, costs, and expenses, as well as incentive payments of $15,000 to each of the named Plaintiffs. ECF No. 148 ("Att'y Fees Mot."). For the following reasons, the Court GRANTS both motions.

## II.　BACKGROUND

Defendant Cardinal Logistics Management Corp. ("Cardinal") is

a North Carolina corporation that provides truck delivery services to Home Depot stores in California. ECF No. 121 ("Aug. 19, 2009 Order") at 1. Plaintiffs served as drivers for Cardinal. Id. On March 14, 2007, Plaintiffs commenced this action in state court, alleging that Cardinal had violated California's Labor Code by classifying Plaintiffs as independent contractors rather than employees. Id. Cardinal removed to federal court. ECF No. 1 ("Notice of Removal"). Cardinal filed a counterclaim alleging breach of contract against Plaintiff Rady and a third-party complaint against an entity Rady allegedly controlled, Rady Transportation. ECF Nos. 44, 45. Plaintiffs filed a motion to dismiss the third-party complaint and counterclaim, which the Court granted. ECF No. 77. The parties participated in early neutral evaluation without success. ECF No. 126.

On September 5, 2008, the Court granted Plaintiffs' motion to certify a class of approximately three hundred persons who "(1) at any time from March 14, 2003 up to and through the time of judgment in the matter, performed work for Cardinal Logistics Management Corporation in California as a delivery truck driver, making local deliveries from Home Depot stores; and (2) were designated and paid by Cardinal as an independent contractor, rather than as an employee; and (3) did not employ other drivers to perform the work assigned to them by Cardinal." ECF No. 83. Pursuant to the Court's order, notice of the action was sent to the class in November 2008. ECF No. 90.

On February 13, 2009, Cardinal moved for partial summary judgment. ECF No. 91. The Court denied Cardinal's motion. ECF No. 121. During September and October of 2009, the parties engaged

2

in further mediation before The Honorable Fern M. Smith (ret.) of JAMS. ECF No. 126. While settlement was discussed, no agreement was reached. Id. On January 22, 2010, the Court set the matter for trial on February 7, 2011. Id. The parties resumed settlement discussions, and on October 4, 2010, they informed the Court that they were near a settlement. ECF No. 131.

On March 3, 2011, the parties agreed to a settlement, and Plaintiffs filed an unopposed motion for preliminary approval on March 4, 2011. ECF No. 136. On March 23, 2011, the Court deferred ruling on Plaintiffs' motion until a number of questions were answered. ECF No. 142. After Plaintiffs responded to the Court's concerns, the Court granted Plaintiffs' motion, setting a date of August 12, 2011 for the final fairness hearing. ECF No. 144.

The settlement provides that Cardinal will pay $3.75 million to a Settlement Fund. Id. The fund will be used to pay awards to individual class members; Class Counsel's attorneys' fees and costs; incentive awards for the named Plaintiffs; the costs of notice and administration; and an allocation of $28,125 to the California Labor and Workforce Development Agency as part of the settlement of Plaintiffs' claims under the California Private Attorneys' General Act, Cal. Lab. Code § 2698 ("PAGA"). Id.

Pursuant to the Court's order granting preliminary approval, on May 11, 2011, the settlement administrator mailed to each class member a "notice packet" containing notice of the settlement, a claim form, a request for exclusion form, and a postage-paid return envelope. ECF No. 151. Class members were given sixty days from the date of the original mailing to submit a claim form and receive funds under the settlement; for class members whose notice packet

was returned as undeliverable, the deadline was July 18, 2011.  <u>Id.</u>

Plaintiffs report that as of August 11, 2011, 186 of the 265 individuals Cardinal had identified as class members had submitted a claim form, yielding a claims rate of more than seventy percent.  Schwartz Decl. ¶¶ 3, 4; Roe Decl. ¶ 19.[1]  Based on the number of claims submitted, the Settlement Administrator has estimated that the average settlement award will be approximately $13,466.91, and that many of the awards will exceed $20,000.  Roe Decl. ¶ 25. Plaintiffs report that no class member has filed an objection to the settlement, and no class members have requested exclusion.  <u>See</u> Schwartz Decl.

On June 27, 2011, Plaintiffs filed a motion seeking attorneys' fees and costs, as well as incentive payments to the named Plaintiffs.  <u>See</u> Att'y Fees Mot.  Plaintiffs seek an incentive award of $15,000 to be paid to each of the three named Plaintiffs.  <u>Id.</u>  In support, they attach declarations of each named Plaintiff providing an account of their efforts in this action.[2]

These declarations contain considerable detail.  Plaintiff Figueroa alleges that he first sought legal representation against Cardinal in approximately August of 2006, and first met with Plaintiffs' counsel in April 2007.  Figueroa Decl. ¶¶ 3-4. Figueroa declares that he assisted in the case by looking for and producing documents, meeting or talking over the phone with his

---

[1] Stacy Roe ("Roe") and Abby Schwartz ("Schwartz") of Settlement Administrator Rust Consulting ("Rust") filed declarations in support of Plaintiffs' Motion.  ECF Nos. 151-5, 153.

[2] ECF Nos. 151-2 ("Figueroa Decl."), 151-3 ("Rady Decl."), 151-4 ("Smith Decl.").

4

lawyers, preparing and attending two depositions, and submitting a declaration in support of class certification. Id. ¶ 7. The declarations of Rady and Smith contain similar statements.

Class Counsel seek $1,237,500 in attorneys' fees, which constitutes thirty-three percent of the Settlement Fund. Atty's Fees Mot. at 2. They allege that the lodestar for this action is $1,605,699.75, and that this award is reasonable in light of this lodestar. Id.

Plaintiffs' Motion for Settlement was heard before Magistrate Judge Bernard Zimmerman on August 12, 2011. ECF No. 154. At the hearing, no class members objected to the settlement. Id.

### III. LEGAL STANDARD

#### A. Final Approval of a Class Action Settlement

Settlement of a class action requires approval of the court. Fed. R. Civ. P. 23(e). The court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). In making this determination, the court may consider any of the following factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Officers for Justice v. Civ. Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

///

5

### B. Class Representative Incentive Awards

The Court may, in its discretion, award incentive awards to named Plaintiffs to compensate them for work done on behalf of the class and in consideration of the risk undertaken in bringing the action. Rodriguez v. West Pub. Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). In assessing the reasonableness of an incentive award, courts often consider: "(1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation." Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

### C. Attorneys' Fees

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys fees and nontaxable costs that are authorized by law or by the parties' agreement." A court has discretion to calculate and award attorneys fees using either the lodestar method or the percentage-of-the-fund method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit has held that twenty-five percent of the gross settlement is the benchmark for attorneys fees awarded under the percentage method, with larger awards often justified when the recovery is small. Id.

///
///
///

**IV. DISCUSSION**

    **A.    Final Approval**

Having considered all the evidence, the Court concludes that the proposed settlement is fundamentally fair, adequate, and reasonable. In many ways, the proposed settlement in this action serves as a model of the representative action at its best. Unlike commonly derided "coupon settlements," the class members in this action will receive sizable awards of well over ten thousand dollars. The claims rate of approximately seventy percent suggests that notice to the class was effective, and the fact that no class members have objected or opted out of the settlement suggests the class regards the settlement to be fair and reasonable. The parties have crafted a notice and award distribution plan that gives class members 180 days to cash their settlement checks before they expire, and provides for the Settlement Administrator to contact class members who have not cashed their checks in the first 150 days to ensure they received the checks and to warn them that their checks will soon expire.

The Court approves a payment of $27,818.97 from the Settlement Fund to Rust Consulting for the actual costs of notice and administration through this date, and for the estimated costs of administration through final distribution of all Settlement Funds. The Court also approves the proposed allocation of $28,125 from the Settlement Fund to the California Labor and Workforce Development Agency, representing seventy-five percent of the value of the settlement of Plaintiffs' PAGA claims.

///

///

7

**B.   Incentive Awards**

The Court finds the proposed incentive awards to named Plaintiffs to be reasonable. Named Plaintiffs participated in this action despite the risks of doing so, such as the possibility that Cardinal would bring a counterclaim. Cardinal, in fact, did bring a counterclaim against Plaintiff Rady. In their declarations, named Plaintiffs have dutifully documented the time and effort they have dedicated to this action. Furthermore, the litigation of this four-year-old case was lengthy and, at some points, heated. As such, the Court GRANTS Plaintiffs' Motion for incentive awards.

**C.   Attorneys' Fees**

Class Counsel seek an award of $1,237,500 in attorneys' fees, which constitutes thirty-three percent of the Settlement Fund. This is considerably higher than the Ninth Circuit's twenty-five percent benchmark. Class Counsel argue that this award is reasonable in light of the lodestar, which they allege to be more than $1.6 million. Atty's Fees Mot. at 14. To support this figure, Plaintiffs have filed declarations of the representatives of the three firms serving as Class Counsel in this action: Jonathan Gertler ("Gertler") of Chavez & Gertler, Jennifer A. Scott ("Scott") of Herum Crabtree, and Kim E. Card ("Card") of the Law Offices of Kim E. Card. ECF Nos. 148-1, 148-2, 149. Attached to these declarations are hourly billing records and other supporting documentation.

The Court finds that this documentation suffers from several obvious flaws. Attached to Gertler's declaration are time records for Chavez & Gertler from 2006 to the present. Gertler Decl. Exs. A & C. While Gertler declares that these records represent

8

accurate time records for this period, he states that he used the firm's current 2011 rates in calculating the lodestar. Gertler Decl. ¶ 13. Card's calculations similarly use her current 2011 rate of $600 per hour for her work from 2006-2011, even though she declares that in 2009, her hourly rate was $525. Card Decl. ¶¶ 40, 46. Class Counsel's work on this action allegedly began five years ago, in 2006. The Court views Class Counsel's decision to not include their actual billing rates for this period, and instead offer their current 2011 rates, with considerable skepticism.

In addition, Class Counsel allege that the Herum Crabtree's lodestar is $285,096, but the evidence they offer in support of this number is unreliable. Scott identifies herself as a partner with the firm, but she does not allege that she worked on this action. Scott Decl. ¶ 2. Rather, she states that two attorneys who have since left the firm, James Belford Brown ("Brown") and Jennifer K. Whipple ("Whipple"), performed work on this action from 2006 through January 28, 2009. Id. ¶¶ 4-6. Scott does not claim to have supervised Brown and Whipple, nor does she provide a date which she joined the firm or became a partner. As such, she has failed to establish that she has personal knowledge of the facts set forth in her declaration.

Having reviewed the Herum Crabtree time records, Brown and Whipple appear to have spent considerable time promoting this action to the press by authoring and distributing press releases and corresponding with news reporters. Id. Ex. 4 at 10-11. Plaintiffs do not allege that this activity was performed for the benefit of the class or that it constitutes legal services subject to recovery on a motion for attorneys' fees.

9

Given the above, the Court finds the $1.6 million lodestar figure offered by Class Counsel to be inflated and unreliable. Despite this, the Court finds that an attorneys' fees award greater than the twenty-five percent benchmark is appropriate given the length of the action, the hard-fought nature of the case, and the sizable recovery negotiated for the class. Accordingly, it awards Class Counsel twenty-eight percent of the Settlement Fund, for a total of $1,050,000 in attorneys' fees.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

- The Court GRANTS final approval of the settlement and ORDERS the parties and the Settlement Administrator to perform their respective obligations under the terms of the Settlement Agreement.

- The Court GRANTS Plaintiffs' request for an incentive award of $15,000 to be paid from the Settlement Fund to each of the named Plaintiffs -- Gerald Smith, Florentino Figueroa, and Samir Rady.

- The Court APPROVES payment of $27,818.97 from the Settlement Fund to Rust Consulting, as Settlement Administrator, for the actual costs of notice and administration through this date and for the estimated costs of administration through final distribution of all Settlement Funds.

- The Court APPROVES the proposed allocation of $28,125 from the Settlement Fund to the California Labor and Workforce Development Agency in settlement of Plaintiffs' PAGA claims brought on behalf of the State of California.

10

- The Court GRANTS Class Counsel's motion for attorneys' fees, awarding the Law Offices of Kim E. Card, Chavez & Gertler, and Herum Crabtree a total of $1,050,000, representing twenty-eight percent (28%) of the Settlement Fund.
- The Court GRANTS Class Counsel's motion for reimbursement of costs and expenses in the total amount of $114,683.02, to be paid from the Settlement Fund.
- Pursuant to the terms of the settlement, after the conclusion of the distribution process, and after the date on which all settlement award checks have expired, the Settlement Administrator shall notify Class Counsel if any Settlement Award checks remain uncashed, such that residue funds have been created. If the amount of any such residue funds exceeds $10,000, the Settlement Administrator shall conduct a supplemental distribution to the class in the manner set forth in the amendments to the Settlement Agreement. If the amount of any such residue funds is less than $10,000, Class Counsel shall notify the Court of same, by way of an Administrative Motion, and shall request that the Court approve distribution of such funds in the form of a cy pres remedy.

IT IS SO ORDERED.

Dated: August 22, 2011

UNITED STATES DISTRICT JUDGE